IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ANGELA AYRES, *et al.*,                           *

        Plaintiffs,                          *

           v.                              *          CIVIL NO.: WDQ-13-1597

OCWEN LOAN SERVICING, LLC,                        *
*et al.*,                                         *

        Defendants.                          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

MEMORANDUM OPINION

Angela Ayres and Stephan Ayres ("the Plaintiffs") *pro se*
sued Ocwen Loan Servicing, LLC ("Ocwen") and others[1] ("the
Defendants") for claims related to mortgage fraud.  Pending are
nine motions.[2]  No hearing is necessary.  *See* Local Rule 105.6.

---

[1] The other Defendants are Litton Loan Servicing ("Litton");
Salomon Brothers Mortgage Securities VII, Inc.; Salomon Smith
Barney, Inc.; Salomon Smith Barney Holding; Citigroup Global
Markets, Inc. f/k/a Salomon Brothers Realty Corp.; J.P. Morgan
Chase Bank; and Citibank, N.A.  *See* ECF No. 1 at 2.  Counsel for
the three Salomon Defendants has yet to enter an appearance in
this suit.  This opinion will refer to Litton, Citigroup,
Citibank, and J.P. Morgan as "the Defendants" for the purposes
of their pending motion to dismiss.

[2] The pending motions are: the Defendants' Motion To Dismiss (ECF
No. 28); the Plaintiffs' Motion To Strike (ECF No. 31); the
Plaintiffs' Cross Motion For Summary Judgment (ECF No. 33); the
Plaintiffs' Motion For Injunctive Relief (ECF No. 34); the
Defendants' Motion to Dismiss/Strike the Motion For Injunctive
Relief (ECF No. 35); the Plaintiffs' Cross Motion To Strike (ECF
No. 43); the Defendants' Motion To Strike (ECF No. 48); the
Plaintiffs' Cross Motion To Strike (ECF No. 50); and the
Plaintiffs' Motion to Strike (ECF No. 51).

For the following reasons, the Defendants' motion to dismiss will be granted, and the Plaintiffs' complaint will be dismissed without prejudice. The Defendants' motion to dismiss the motion for injunctive relief will be granted. All other motions will be denied.

I.   Background[3]

On March 18, 1991, the Plaintiffs bought a property at 6600 Halleck Street ("the Property") with a loan of $72,660 from Market Street Mortgage secured by a Deed of Trust. *See* ECF No. 1 ¶ 13. The loan was assigned to Dominion Bankshares Mortgage and then First Union. *Id.* ¶ 14. In 1993, the Plaintiffs defaulted on their mortgage, and Stephan Ayres filed for bankruptcy. *Id.* ¶ 15. In June 1996, Stephan Ayres completed the bankruptcy plan, and the bankruptcy case was discharged. *Id.* ¶ 16. After the bankruptcy discharge, the Plaintiffs paid their mortgage and all the arrears through the bankruptcy. *Id.* ¶ 18. In May 1998, First Union returned a mortgage payment stating that the Plaintiffs owed $13,972. *Id.* ¶ 17. The Plaintiffs were not in default. *Id.* ¶ 18. First Union proceeded with a foreclosure. *Id.* ¶ 20. In November 1998, the

---

[3] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiffs' loan was accepted into the United States Department
of Housing and Urban Development ("HUD") assignment program.
*Id.*

In April 1999, the loan was transferred to Clayton National
Inc. for servicing.  ECF No. 1 ¶ 21.  In November 2000, the loan
was transferred to Litton for servicing.  *Id.*  On December 1,
2000, the loan was assigned from HUD to Salomon Brothers Realty
Corp.  *Id.* ¶ 23.  In October 2001, Litton solicited Plaintiffs
to participate in a Fresh Start Program which would have added
$24,532.42 of accrued interest to the Plaintiffs' loan.  *Id.*
¶ 24.  Litton "[f]alsely claim[ed] Plaintiffs would still be a
participant in the HUD Assignment Program, when in fact HUD had
ended it's [sic] assignment program" and HUD had sold the loan
to Salomon Brothers.  *Id.*

On several occasions, the Plaintiffs disputed charges and
Litton's claims that there was a defaulted balance, arrearage
and accrued interest.  *Id.* ¶ 24.  Litton refused to correct the
account.  *Id.*  In 2007, Litton offered the Plaintiffs an
unsolicited loan modification claiming $23,395 in unpaid fees
and increasing the principle amount owed to $85,031 with an
undisclosed balloon payment.  *Id.* ¶ 25.  Litton also offered to
sell the Plaintiffs' home for a fee of $1500.  *Id.*

In July 2009, the Plaintiffs defaulted on their mortgage.
ECF No. 1 ¶ 26.  Angela Ayres requested a modification under the

3

Home Affordable Modification Program ("HAMP"). *Id.* ¶ 27. She was improperly denied the HAMP modification, "even though she [met] the eligibility criteria per HAMP guidelines." *Id.* Angela Ayres filed a complaint with her congressperson and retained an attorney. *Id.* ¶ 28. In July 2011, Litton offered a trial period plan. *Id.* In October 2011, Litton approved and offered an "in house modification," rather than the requested HAMP. *Id.* ¶ 29. The Plaintiffs did not accept this modification because it added $33,000 to the loan balance. *Id.* ¶ 30.

By January 2010, the Plaintiffs had paid all previously missed mortgage payments. ECF No. 1 ¶ 32. In November 2011, Litton transferred the servicing of the loan to Ocwen. *Id.* ¶ 33. A billing statement from Ocwen contained "the same inaccurate amounts as Litton." *Id.* ¶ 34. The Plaintiffs sent a letter requesting that Ocwen correct the account and conduct an audit. *Id.* Ocwen refused to correct the account. *Id.* ¶ 35. In January 2012, Angela Ayres requested a HAMP loan modification from Ocwen. *Id.* ¶ 36. Ocwen denied the request for HAMP modification and offered an "in house modification" using the same amounts as Litton. *Id.* ¶ 38. The Plaintiffs did not accept the modification "because it would have obligated the Plaintiffs to pay monies they did not owe." *Id.* In January 2012, the Plaintiffs filed a complaint with the Maryland

4

Division of Financial Regulations.  *Id.* ¶ 39.  In response,
Ocwen claimed that the account was 49 months delinquent and that
it was past due for the December 1, 1996 forbearance payment.
*Id.*  However, the Plaintiffs were not under a forbearance
agreement[4] and the loan had never been 49 months delinquent.  *Id.*

The Plaintiffs' attorney sent several letters identifying
misapplied payments and overcharges.  ECF No. 1 ¶ 39.  Ocwen did
not correct the account.  *Id.*  In July 2012, the Plaintiffs sent
Ocwen documentation that they had paid property taxes, and
requesting that their escrow account be corrected to reflect
this payment.  *Id.* ¶ 40.  However, Ocwen continued to escrow for
property taxes that had been paid.  *Id.*  In January 2013, the
Plaintiffs sent Ocwen a letter requesting a refund for the
overcharges to their escrow account of over $4,000.  *Id.* ¶ 41.
Ocwen refunded $2,600, "falsely claiming there was a prior
escrow deficit owed."  *Id.*  Ocwen repeatedly called the
Plaintiffs' home after they had been notified that the
Plaintiffs were represented by counsel.  *Id.* ¶ 42.  Ocwen also
sent default letters even though the Plaintiffs were not in
default.  *Id.*

---

[4] A forbearance agreement provides short-term relief for a
mortgagor. *See* 24 C.F.R. § 220.753.  The mortgagee agrees to
either reduce or suspend mortgage payments for a specified
period and will not foreclose on the property.  *Id.*

On June 6, 2013, the Plaintiffs *pro se* sued the Defendants for claims related to mortgage fraud.  ECF No. 1.  The Defendants moved to dismiss for insufficient service.  ECF Nos. 6, 8, 17.  On September 5, 2013, the Court granted the motions to dismiss and denied several other motions brought by the Plaintiffs.  ECF No. 24.  On September 17, 2013, the Plaintiffs filed an affidavit of service for the Defendants.  ECF No. 27.  On September 27, 2013, the Defendants moved to dismiss the complaint for failure to state a claim.  ECF No. 28.  On October 15, 2013, the Plaintiffs moved to strike the motion to dismiss.  ECF No. 31.  The Plaintiffs opposed this motion.  ECF No. 32.  On October 15, 2013, the Plaintiffs filed a cross motion for summary judgment and a motion for injunctive relief.  ECF Nos. 33, 34.  On October 28, 2013, the Defendants moved to strike the motion for injunctive relief.  ECF No. 35.  On November 1, 2013, the Defendants replied to the Plaintiffs' opposition to the motion to dismiss, and opposed the Plaintiffs' motion to strike and motion for summary judgment.  ECF Nos. 36, 40, 41.

On November 4, 2013, the Plaintiffs moved to strike the Defendants' motion to strike.  ECF No. 43.  On November 18, 2013, the Plaintiffs replied to the oppositions to their pending motions.  ECF Nos. 45, 46.  On November 27, 2013, the Defendants

moved to strike some of the Plaintiffs' filings.[5]  ECF No. 48.

On December 2, 2013, the Plaintiffs moved to strike some of the

Defendants' filings.[6]  ECF Nos. 50, 51.

II.  Analysis

   A.  Legal Standard

   Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed

for failure to state a claim upon which relief can be granted.

Rule 12(b)(6) tests the legal sufficiency of a complaint, but

does not "resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses." *Presley v. City of

Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

   The Court bears in mind that Rule 8(a)(2) requires only a

"short and plain statement of the claim showing that the pleader

is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l*

---

[5] The Defendants moved to strike the following filings as
impermissible surreply memoranda:
   1) Plaintiffs' Reply to Defendants' Response in Further
      Support of Their Motion to Dismiss (ECF No. 16);
   2) Plaintiffs' Reply to Defendants' Response to Plaintiffs'
      Motion to Strike (ECF No. 22);
   3) Plaintiffs' Response to Defendants' Opposition to the
      Plaintiffs' Cross-Motion for Summary Judgment and
      Response to Defendants' Motion to Dismiss (ECF No. 45);
      and,
   4) Plaintiffs' Response to Defendants' Opposition to
      Plaintiffs' Motion to Strike for Summary Judgment and
      Response to Defendants' Motion to Dismiss (ECF No. 47);
*See* ECF No. 48.

[6] Plaintiffs moved to strike the Defendants' motion to strike
(ECF No. 48) as a sham pleading and the Defendants' Reply in
Support of Motion to Strike (ECF No. 44) as redundant.  *See* ECF
Nos. 50, 51.

*Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id*. at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks and alteration omitted).

B.   The Defendants' Motion to Dismiss

The Defendants seek to dismiss all the Plaintiffs' claims. *See* ECF No. 28-1 at 1. When construed liberally, the complaint asserts the following claims: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of the covenant of good

8

faith and fair dealing; (4) fraud; (5) negligence; (6) usury; (7) unjust enrichment; (8) willful misfeasance; (9) violation of the Truth-in-Lending Act ("TILA");[7] (10) violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"); (11) violation of the Fair Debt and Collection Practices Act ("FDCPA"); (12) violation of the Maryland Mortgage Fraud Presentation Act ("MFPA"); (13) violation of the Maryland Consumer Protection Act ("MCPA");[8] (14) rescission; and (15) emotional distress. *See* ECF No. 1 at 8-20; ECF No. 32 at 1.

1.   Count I

In Count I of the complaint, the Plaintiffs include allegations of breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. *See* ECF No. 1 at 8-9.

a.   Breach of Contract

Although the complaint generally refers to "the Defendants", in their opposition the Plaintiffs appear to limit their breach of contract claim to Litton and Ocwen. *See* ECF No. 32 at 3. The Plaintiffs argue that Litton and Ocwen violated the terms of the Pooling and Servicing Agreement ("PSA") and the Deed of Trust. *See* ECF No. 23 at 3-4.

---

[7] 15 U.S.C. § 1601 *et seq*.

[8] Md. Code Ann., Com. Law § 13-301 *et seq*. (West 2012).

To survive a motion to dismiss, "a complaint for breach of contract must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation." *See Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 791 (D. Md. 2002) (*citing Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (Md. 1977)).

Here, the Plaintiffs have not alleged that Litton and Ocwen owe them a contractual obligation.  The Plaintiffs allege that Litton and Ocwen are loan servicers. *See* ECF No.1 ¶¶ 6, 7.  The Plaintiffs do not allege that Litton and Ocwen are signatories or parties to either the Deed of Trust or the PSA, which the Plaintiffs allege they breached.  The Plaintiffs do not allege that the Deed of Trust or PSA was assigned to either mortgage servicer; instead, the complaint states that the Deed of Trust was assigned to Salomon Brothers Realty Corporation. *See* ECF No. 1 ¶ 23; ECF No. 1, Ex. 9.  Documents attached to the complaint state that the "servicing rights" were transferred to Litton, and then to Ocwen. *See* ECF No. 1, Exs. 7, 21.  Because the Plaintiffs have not sufficiently alleged that the Defendants owed them a contractual duty, their breach of contract claim will be dismissed.[9]

---

[9] *Cf. Webb v. Green Tree Servicing, LLC*, No. ELH-11-2105, 2011 WL 6141464, at *9 (D. Md. Dec. 9, 2011) (plaintiff sufficiently

      b.    Breach of Fiduciary Duty

The Plaintiffs allege that the Defendants breached a fiduciary duty by not correcting accounting errors and not disclosing terms in a loan modification offer. *See* ECF No. 1 at 9. However, the Plaintiffs have not identified a fiduciary duty owed by the Defendants. Courts have consistently held that banks and mortgage servicers do not owe customers a fiduciary duty. *See, e.g., Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 918-19 (D. Md. 2012); *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011). The Plaintiffs have not sufficiently alleged a claim for breach of fiduciary duty.

      c.    Breach of Covenant of Good Faith and Fair Dealing

Maryland does not recognize a separate cause of action for a breach of the duty of good faith and fair dealing. *See Baker v. Sun Co., Inc. (R & M)*, 985 F. Supp. 609, 610-11 (D. Md. 1997). Accordingly, the Defendants' motion to dismiss Count I will be granted.

---

pled breach of contract claim against mortgage servicer when the plaintiff alleged that the defendant purchased numerous mortgages, and it owed him duties under the deed of trust even though it was not the original party of the note).

11

2.   Count II

In Count II of the complaint, the Plaintiffs appear to assert claims for fraud, negligence, usury, and unjust enrichment. *See* ECF No. 1 at 10-11.

a.   Fraud

Under Maryland law, a claim for fraud requires allegations that:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 385 Md. 1, 28 (Md. 2005).

Rule 9(b) requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 799 (D. Md. 1998). To satisfy the rule, a plaintiff must "identify with some precision the date, place, and time of active misrepresentations or the circumstances of active concealments, specifying which Defendant . . . is supposedly responsible for those statements or omissions." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

12

Here, the Plaintiffs have not pled fraud with sufficient particularity. Because the Plaintiffs generally refer to "the Defendants" in their allegations, it is not clear from the complaint which of the Defendants made which of the alleged misrepresentations. *See* ECF No. 1 at 10. "A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 200). The complaint's allegations of misrepresentation do not provide the Defendants with sufficient notice of the fraud allegations against each of them.[10]

### b.   Negligence

The Plaintiffs appear to assert a claim for negligence against the Defendants. *See* ECF No. 1 at 11. The Defendants argue that the Plaintiffs have failed to allege a duty of care. *See* ECF No. 28-1 at 11.

To state a claim for negligence under Maryland law, a plaintiff must allege that (1) the defendant had a duty to the

---

[10] *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) ("A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.").

plaintiff, (2) the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was proximately caused by the breach. *See Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994).

Here, the Plaintiffs do not allege any specific duty owed by the Defendants. Courts have consistently found that a mortgage servicer does not owe a tort duty to its loan customer. *See, e.g., Farasat v. Wells Fargo, Bank, N.A.*, 913 F. Supp. 2d 197, 207-08 (D. Md. 2012); *Bowers v. Bank of America, N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012). Because the Plaintiffs have not alleged a tort duty owed to them by the Defendants, their negligence claim will be dismissed.

c. Usury

Under Maryland law, usury means "the charging of interest by a lender in an amount which is greater than allowed" by statute. *See* Md. Code Ann., Com. Law § 12-101(k). Here, the Plaintiffs allege the Defendants committed usury by charging fees on their mortgage beyond those authorized by the Deed of Trust, and by improperly retaining escrow funds. *See* ECF No. 1 at 10-11; ECF No. 32 at 8. Because the Plaintiffs do not allege that the Defendants charged interest greater than that allowed by statute, they have failed to state a claim for usury.

14

d.   Unjust Enrichment

A Maryland unjust enrichment claim must allege that (1) the plaintiff conferred a known benefit on the defendant, and (2) it would be inequitable for the defendant to keep the benefit without paying for it. *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151-52, (Md. 2000). Here, the Plaintiffs have not alleged the benefit that the Defendants have unjustly received. Accordingly, the claim will be dismissed.

e.   Willful Misfeasance

The Plaintiffs appear to allege a claim for willful misfeasance. *See* ECF No. 1 at 11; ECF No. 32 at 9. Willful misfeasance is not a cause of action recognized under Maryland law; thus, this claim will be dismissed. Accordingly, the Defendants' motion to dismiss Count II will be granted.

3.   Count III

In Count III of the complaint, the Plaintiffs allege that the Defendants violated TILA and the Dodd-Frank Act. *See* ECF No. 1 at 12-13. The Defendants argue that they are not governed by either statute because they are not "creditors" as defined by TILA. *See* ECF No. 28-1 at 14.

TILA ensures "meaningful disclosure of credit terms" and applies only to creditors. *See* 15 U.S.C. § 1601(a); *Kelly v. One West Bank, FSB*, No. RDB-10-118, 2010 WL 2640390, at *2 (D. Md. June 30, 2010). Under TILA, a "creditor" (1) regularly

extends consumer credit, and (2) "is the person to whom the debt arising from [the loan] is initially payable on the face of the evidence of indebtedness [or] agreement."  15 U.S.C. § 1602(f).

Here, the Plaintiffs do not allege that the Defendants were the initial payees on the mortgage documents.  *See* ECF No. 1 ¶ 13 (stating that the Plaintiffs received the loan from Market Street Mortgage).  Because the Defendants are not "creditors" under TILA, the Defendants' motion to dismiss Count III will be granted.[11]

### 4.   Count IV – FDCPA Claim

The Plaintiffs allege that Litton and Ocwen violated the FDCPA.  *See* ECF No. 1 ¶ 47.  To state a claim under the FDCPA, the plaintiff must allege that:  (1) the defendant is a debt collector under the FDCPA, (2) the plaintiff is the object of a collection activity arising from consumer debt, and (3) the defendant engaged in a debt collection activity prohibited by the FDCPA.  *See Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012).

By enacting the FDCPA, Congress sought to "eliminate abusive debt collection practices by debt collectors."  15

---

[11] *See, e.g., Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 269-70 (4th Cir.2008) (company was not a "creditor" under TILA; the transaction documents showed that the loan was initially payable to another entity).

U.S.C. § 1692(e).  A "debt collector" is "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  *Id.* § 1692a(6).  The FDCPA applies when a debt collector uses practices prohibited by the statute.  *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725 (D. Md. 2011). The FDCPA contains non-exhaustive lists of prohibited practices. *See, e.g.*, 15 U.S.C. § 1692f.  "The FDCPA is a strict liability statute and a consumer has only to prove one violation in order to trigger liability."  *Bradshaw*, 765 F. Supp. 2d at 725 (*citing* § 1692k(a)).

The Defendants argue that the Plaintiffs have not alleged facts showing that the Litton and Ocwen are "debt collectors" under the FDCPA.  *See* ECF No. 28-1 at 19.  Generally, mortgage servicing companies are not debt collectors under the FDCPA. *See, e.g.*, *Adam v. Wells Fargo Bank, N.A.*, No. ELH-09-2387, 2011 WL 3841547, at *20 (D. Md. Aug. 26, 2011); *Flores v. Deutsche Bank Nat'l Trust, Co.*, No. DKC-10-0217, 2010 WL 2719849, at *6 (D. Md. July 7, 2010).  Mortgage servicing companies are exempt from the definition of "debt collectors" under the FDCPA only "to the extent that they take action to collect debts that were

17

not in default at the time they acquired the debts."[12]  Here, the Plaintiffs allege that they were not in default with Litton and when Owen acquired the servicing rights to the debt.  *See* ECF No. 1 ¶¶ 18, 23, 32-33.  The Plaintiffs assert that there was no default before 2000, when Litton began servicing the loan.  *See id.* ¶¶ 17-21.  The Plaintiffs allege that they had cured any default when Ocwen began servicing the loan.  *See id.* ¶¶ 32-33. Accordingly, the Plaintiffs have not alleged that the Defendants are debt collectors under the FDCPA.  The Defendants' motion to dismiss Count IV will be granted.

    5.    Count V – MFPA Claim

    The Maryland Mortgage Fraud Protection Act states that "[a] person may not commit mortgage fraud."  Md. Code Ann., Real Prop. § 7-402.  Mortgage fraud "means any action by a person made with the intent to defraud" that involves actions such as:

> (1) Knowingly making any deliberate misstatement,
> misrepresentation, or omission during the mortgage
> lending process with the intent that the misstatement,
> misrepresentation, or omission be relied on by a
> mortgage lender, borrower, or any other party to the
> mortgage lending process; (2) Knowingly creating or
> producing a document for use during the mortgage
> lending    process    that    contains    a    deliberate
> misstatement, misrepresentation, or omission with the

---

[12] *See Webb v. Green Tree Servs., LLC*, No. ELH-11-2105, 2012 WL 2065539, at *3 (D. Md. June 7, 2012); 15 U.S.C. § 1692a(6)(F)(iii) (exempting from the definition of the term "debt collector" any person attempting to collect a debt owed to the extent it "concerns a debt which *was not in default at the time it was obtained by such person*."  (emphasis added)).

> intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

Md. Code Ann., Real Prop. § 7-406(d).  The statute defines "mortgage lending process" to include "[t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage."  Md. Code Ann., Real Prop. § 7-401(e)(2).  The MFPA provides a private right of action "for damages incurred as a result of a violation of this subtitle."  Md. Code Ann., Real Prop. § 7-406(a)(1).

The Plaintiffs allege that the Defendants violated the MFPA by creating a fraudulent transaction history and composite report, misrepresenting the account balance, fraudulently charging servicer advances, late fees, property preservation and inspection fees, and interest, and failing to include disclosures.  *See* ECF No. 1 at 14-15.

To state a claim for fraudulent misrepresentation, a plaintiff must allege:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

19

*Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F.
Supp. 2d 502, 520 (D. Md. 2013). Because the Plaintiffs' MFPA
claims sound under fraud, the heightened pleading standard of
Rule 9(b) applies. *See Zervos v. Ocwen Loan Serving, LLC*, No.
1:11-CV-03757-JKB, 2012 WL 1107689, at *5 (D. Md. March 29,
2012).

Here, the complaint consistently alleges that "Defendants"
fraudulently added fees or claimed there was an escrow deficit.
*See* ECF No. 1 at 15. Collectively referring to the Defendants
rather than identifying the party that made the alleged
misrepresentation is not sufficient. *See Haley v. Corcoran*, 659
F. Supp. 2d 714, 724 (D. Md. 2009) ("[U]ndifferentiated
assertion of fraud against multiple defendants is prohibited by
Rule 9(b)"). The Plaintiffs also fail to allege that they
relied on the misrepresentations, or that the Defendants made
the representations with intent to defraud as required by the
MFPA. *See* Md. Code Ann., Real Prop. § 7-401(d)(1), (2).
Accordingly, the Plaintiffs have not stated a claim under the
MFPA, and Count V will be dismissed.

6.    Count VI – MCPA Claim

The Maryland Consumer Protection Act prohibits "unfair or
deceptive trade practices." *See* Md. Code Ann., Com. Law § 13-
301. Section 13-408 of the MCPA provides a private cause of
action. *See* Md. Code Ann., Com. Law § 13-408. A private party

bringing a claim under § 13-408 of the MCPA must allege "(1) an
unfair or deceptive practice or misrepresentation that is (2)
relied upon, and (3) causes them actual injury." *Steward v.
Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012). The injury
must be "objectively identifiable . . . [i]n other words, the
consumer must have suffered an identifiable loss, measured by
the amount the consumer spent or lost as a result of his or her
reliance" on the misrepresentation. *Lloyd v. Gen. Motors Corp.*,
397 Md. 108, 143 (Md. 2007).

The Plaintiffs allege that the Defendants violated the MCPA
by failing to disclose contact information, making false claims
about their HAMP qualifications, and attempting to defraud the
Plaintiffs by making a short sale offer, among other
allegations. *See* ECF No. 1 at 15-16. Because these allegations
sound in fraud, Rule 9(b)'s heightened pleading standards apply.
*See Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009).

Here, the Plaintiffs do not allege that they experienced
actual loss or injury as a result of their reliance on the
alleged misrepresentations of the Defendants. For example, the
Plaintiffs allege that the Defendants did not identify a contact
person for complaints for four months, and their escrow account
was overcharged, but later corrected. *See* ECF No. 1 at 15-16.
A plaintiff must allege actual injury or loss to state a claim
under the MCPA. *See, e.g., Lloyd*, 397 Md. at 143. The

Plaintiffs have failed to state a claim for violations of the MCPA; thus, Count VI will be dismissed.

       7.   Count VII - Rescission

The Defendants argue that the Plaintiffs' claim for rescission should be dismissed because the claim is time-barred. *See* ECF No. 28-1 at 26-29.  In their opposition, the Plaintiffs concede that the time to rescind has expired.  *See* ECF No. 32 at 17.  Accordingly, the Defendants' motion to dismiss Count VII will be granted.

       8.   Count VIII - Emotional Distress

To the extent that, in Count VIII, the Plaintiffs seek to assert an independent claim for emotional distress, this claim fails.  *See* ECF No. 1 at 18-20.

In Maryland, to state a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must allege that the defendant intentionally or recklessly engaged in extreme and outrageous conduct, and the wrongful conduct caused the plaintiff severe emotional distress.  *See Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992).  "IIED claims are rarely viable in a case brought under Maryland law." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (internal quotation marks omitted).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

22

intolerable in a civilized community." *Lasater v. Guttmann*, 5
A.3d 79, 89 (Md. Ct. Spec. App. 2010) (*quoting Harris v. Jones*,
380 A.2d 611, 614 (Md. 1977)).

Severe emotional distress under Maryland law must be "so
severe as to have disrupted [the plaintiff's] ability to
function on a daily basis." *Bryant v. Better Bus. Bureau of
Greater Md., Inc.*, 923 F. Supp. 720, 750 (D. Md. 1996).
Maryland courts have held that there is a "high burden imposed
on the requirement that a plaintiff's emotional distress be
severe." *Manikhi v. Mass Transit Admin.*, 260 Md. 333, 368 (Md.
2000).

Here, the Plaintiffs allege that they have "received
numerous default letters and phone calls threatening them with
foreclosure" from the Defendants. *See* ECF No. 1 at 18.  These
alleged actions are not so extreme or outrageous as to be
actionable under Maryland tort law. *See Hamilton v. Ford Motor
Credit Co.*, 66 Md. App. 46, 60 (Md. 1986) (conduct was not
extreme or outrageous when defendants harassed the plaintiff
with repeated calls in connection with debt collection).  The
Plaintiffs also have failed to allege that they experienced
severe emotional distress.  The Plaintiffs allege that this
"crisis with the mortgage" has caused Angela Ayres emotional
distress, which aggravated her health issues causing her to be
hospitalized for four days. *Id*. at 19.  The Plaintiffs allege

that it caused her to lose hair, caused her health to decline, and caused her to seek mental health treatment. *Id*. These allegations do not sufficiently allege the degree of emotional distress necessary to sustain an IIED claim. *See Caldor, Inc. v. Bowden*, 625 A.2d 959, 964 (Md. 1993) ("For emotional distress to be severe, it must be so acute that no reasonable man could be expected to endure it.") (internal quotation marks omitted). Accordingly, the Defendants' motion to dismiss Count VIII will be granted.

 9.   Summary

For the reasons stated above, the Defendants' motion to dismiss will be granted.  Because the Plaintiffs are representing themselves, and they have apparently asserted their claims in good faith, the dismissal will be without prejudice. They will be given an opportunity to amend their complaint in accordance with this Memorandum Opinion.  But, the Plaintiffs are warned that if they do not clearly and adequately state their claims, they will be dismissed with prejudice.

 C.   The Plaintiffs' Motion to Strike the Motion to Dismiss

The Plaintiffs argue that the Court should strike the Defendants' motion to dismiss because the Defendants did not file their corporate disclosure statements.  *See* ECF No. 31 at 2.  The Defendants have since filed the appropriate disclosure statements.  *See* ECF Nos. 7, 38, 39.  Because the Plaintiffs

24

have not identified any prejudice they suffered from the late disclosures, the motion to strike will be denied.

    D.   Other Motions

The Plaintiffs filed a motion they captioned as a cross motion for summary judgment. ECF No. 33. In light of the Court's disposition of the Defendants' motion to dismiss, this motion will be denied as moot.

The Plaintiffs also moved for injunctive relief. ECF No. 34. The Defendants then moved to strike, or in the alternative, to dismiss this motion. ECF No. 35. The Plaintiffs then moved to strike the Defendants' motion. ECF No. 43. The Plaintiffs' motion to strike again argues that the motion is improper because the Defendants have not filed disclosure statements. *See* ECF No. 43. As discussed above, the disclosure statements have been filed. Accordingly, the Plaintiffs' motion to strike (ECF No. 43) will be denied.

The Plaintiffs' motion for injunctive relief fails because the complaint will be dismissed. The motion also attempts to assert additional claims and allegations not found in the complaint. *See* ECF No. 35. As the claims in the complaint will be dismissed without prejudice, the Plaintiffs may amend their complaint to include a claim for injunctive relief. As it stands, their motion for injunctive relief will be denied, and

the Defendants' motion to dismiss the motion for injunctive relief will be granted.

The Plaintiffs filed a motion to strike the Defendants' reply in support of their motion to dismiss the Plaintiffs' motion for injunctive relief. *See* ECF No. 51. The Plaintiffs' argue that the Defendants' motion was an impermissible surreply. *See id*. at 2. Although the Defendants' reply was filed beyond the reply deadline, the Plaintiffs have not identified any prejudice they experienced as a result of this delay. Accordingly, the motion to strike the Defendants' reply will be denied.

The Plaintiffs also filed another motion to strike, arguing the Defendants' motion to strike was a "sham motion designed to bully and intimidate them." *See* ECF No. 50 at 4. This motion contains an insufficient basis for the motion to strike. Accordingly, the Court will deny this motion.

The Defendants seek to strike some of filings by the Plaintiffs as impermissible surreply memoranda.[13]  *See* ECF No.

---

[13] The Defendants moved to strike the following filings:
1) Plaintiffs' Reply to Defendants' Response in Further Support of Their Motion to Dismiss (ECF No. 16);
2) Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Strike (ECF No. 22);
3) Plaintiffs' Response to Defendants' Opposition to the Plaintiffs' Cross-Motion for Summary Judgment and Response to Defendants' Motion to Dismiss (ECF No. 45); and,

48.  As the motions to which these filings apply will be denied, this motion to strike will be denied as moot.

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss will be granted, and the Plaintiffs' complaint will be dismissed without prejudice.  The Defendants' motion to dismiss the Plaintiffs' motion for injunctive relief will be granted. All other motions will be denied.

_8/27/14_
Date

William D. Quarles, Jr.
United States District Judge

---

4) Plaintiffs' Response to Defendants' Opposition to Plaintiffs' Motion to Strike for Summary Judgment and Response to Defendants' Motion to Dismiss (ECF No. 47);
See ECF No. 48.

27